IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| In re: BARNEY ALLEN SQUIRES,<br><br>     Debtor. | Case No. 11-31098-DOT<br>Chapter 7 |
| THOMAS M. TODD,<br><br>     Plaintiff,<br>v.<br><br>BARNEY ALLEN SQUIRES,<br><br>     Defendant. | Adv. Pro. No. _____ |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Plaintiff, Thomas M. Todd ("Todd"), by counsel, and pursuant to 11 U.S.C. § 523 and 28 U.S.C. § 1334, states the following in support of his Complaint to Determine Dischargeability of Debt (the "Complaint") against defendant debtor, Barney Allen Squires (the "Debtor"):

**PARTIES AND JURISDICTION**

1. The Debtor is a natural person and resident of Orange County, Virginia, and the debtor in this Chapter 7 bankruptcy case.

David K. Spiro (VSB No. 28152)
Franklin R. Cragle, III (VSB No. 78398)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone: 804.771.9500
Facsimile: 804.644.0957
E-mail dspiro@hf-law.com
    fcragle@hf-law.com

*Counsel for Plaintiff Thomas M. Todd*

2. Todd is a natural person and resident of Prince William County, Virginia and a creditor of the Debtor.

3. This Court has jurisdiction over the subject matter of this controversy pursuant to 11 U.S.C. § 523 and 28 U.S.C. § 1334.

4. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) as to the Debtor.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

6. At all times relevant hereto, the Debtor was the corporate officer and owner of Performance Auto Crafters, Inc., operating at 32481 Constitution Highway, Locust Grove, Virginia in Orange County, Virginia, under the name Performance Auto Crafters ("Performance Auto Crafters").

7. During its operation, the Debtor advertised and represented himself and Performance Auto Crafters to potential clients as experts in the restoration of old automobiles.

8. Todd is the owner of a 1965 Ford Thunderbird convertible (the "Thunderbird") that was in need of complete restoration.

9. Todd approached the Debtor in August 2005 to discuss the restoration of the Thunderbird. During this discussion, the Debtor represented to Todd, Todd's son and Todd's son-in-law, that he could restore the vehicle, that the restoration work would be done in a manner consistent with the standards in the profession, and that the complete restoration project would take approximately one year (the "Restoration Project").

10. On October 15, 2005, the Debtor provided formal estimates for the Restoration Project to Todd amounting to $33,586.91 (the "Estimate"). A true and correct copy of the Estimate is attached hereto and marked **Exhibit A**.

11. The Debtor knew or should have known that the Restoration Project would cost over twice the Estimate, but the Debtor still quoted Todd this unreasonably low amount with the intent of inducing Todd into entering into an oral contract.

12. Following the making of the false representations described above, Todd reasonably relied upon the false representations to his detriment by accepting the offer made by the Debtor for the Restoration Project for $33,586.91 and directing that the proposed work be done on the Thunderbird.

13. On January 6, 2006, Todd wrote a letter to the Debtor enclosing $10,000.00 to the Debtor as a pre-payment for the Restoration Project and requesting that the Restoration Project begin (the "January 6 Letter"). A true and correct copy of the January 6 Letter is attached hereto and marked **Exhibit B**.

14. Throughout 2006 and 2007, Todd made frequent visits to the Debtor and Performance Auto Crafters to inspect the progress of the Restoration Project.

15. To his dismay, little, if any, work was being done to the Thunderbird.

16. Todd questioned the Debtor the reason for the lack of progress and, in response, the Debtor made numerous additional misrepresentations regarding purported difficulties in obtaining necessary parts and various other excuses relating to the complexity of the Restoration Project. However, the Debtor regularly assured Todd that the Restoration Project was on track.

17. At many of these meetings, the Debtor requested additional monies to complete the Restoration Project.

18.     In reasonable reliance on these misrepresentations, over the course of the next eighteen months, Todd forwarded an additional $20,000.00 to the Debtor.

19.     In 2008, Todd made numerous additional visits to check on the status of the Restoration Project and still, no work was being performed on the Thunderbird.

20.     In 2009, after four years and little progress to the Thunderbird, Todd made numerous attempts to meet with the Debtor to discuss the Restoration Project. Each of these meetings was either cancelled by the Debtor, or the Debtor simply failed to appear at such meetings.

21.     On October 29, 2009, Todd and the Debtor met to discuss the Debtor's difficulties relating to the Restoration Project. At that time, the Debtor asserted that the difficulty of getting parts was the reason for the four-year delay (the "October 29 Meeting").

22.     Also at the October 29 Meeting, the Debtor, for the first time -- *after four years* -- stated that there were additional required replacement parts that were not part of the original cost estimate that were required to restore the Thunderbird to "first class working condition."

23.     At that time, the Debtor asked Todd for more money, to which Todd refused.

24.     On October 29, 2010, five years after the initial meeting, Todd retook possession of the un-restored Thunderbird from the Debtor.

25.     On February 14, 2011, Todd obtained a written estimate from American Classic Auto Restoration & Collision Center in the amount of $72,405.00 to *complete* the Restoration Project (the "American Classic Estimate"). A true and correct copy of the American Classic Estimate is attached hereto and marked **Exhibit C**.

26.     Upon information and belief, the Debtor spent the $30,000.00 forwarded by Todd on matters unrelated to the Restoration Project.

27. Moreover, the Debtor made these numerous material misrepresentations to induce Todd to forward at least $30,000.00 with no intention of using these funds for the Restoration Project.

28. The Debtor has not refunded Todd any portion of the $30,000.00 advanced to the Debtor for the Restoration Project despite only minor work being done to the Thunderbird.

29. As a result of being intentionally misled by the Debtor, Todd has sustained damages and pecuniary loss of at least $72,405.00, as well as any portion of the $30,000.00 advanced to the Debtor that was not used on the Restoration Project.

30. As a result of the Debtor's intentional misrepresentations, the Debtor is indebted to Todd. Pursuant to Sections 523(a)(2)(A) and 523(a)(3)(B), the Debtor's debt to Todd is excepted from the discharge that the Debtor received in this case on August 11, 2011.

WHEREFORE, plaintiff Thomas M. Todd, by counsel, respectfully requests that the Court (a) determine that the debt owed by the Debtor to Todd is non-dischargeable; (b) order an accounting of the $30,000.00 pre-paid to the Debtor by Todd; (c) determine the extent of the debt owed to Todd that is non-dischargeable and enter judgment against the Debtor for such amount; and (d) grant such other and further relief as the Court deems just and proper.

Dated: September 14, 2011                                THOMAS M. TODD


                                                         By: __/s/ David K. Spiro__
                                                                     Counsel

David K. Spiro (VSB No. 28152)
Franklin R. Cragle, III (VSB No. 78398)
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, Virginia 23218-0500
Telephone:   804.771.9500
Facsimile:   804.644.0957
E-mail dspiro@hf-law.com
       fcragle@hf-law.com

*Counsel for Plaintiff Thomas M. Todd*